STATE *ex rel.* LEWELLEN, *Collector,* v. SCHOOLEY, *et al., Appellants.*

1. **Tax Bill:** STATUTE: EVIDENCE. A tax bill in proper form and which states the facts required by Revised Statutes, section 6837, is, by the provisions of said section, *prima facie* evidence that the amount claimed in it is just and correct.

2. **Assessor:** OMISSION OF AFFIDAVIT. The omission of an assessor to verify the assessment lists as prescribed by the statute is fatal to the collection of taxes based thereon.

3. **Tax Books, Destruction of:** EVIDENCE. The destruction or mutilation of tax books by a mob does not prevent the collector from making up and certifying tax bills. The inquiry would be open in such cases whether the tax bills stated the facts correctly, and they would be tested by the best secondary evidence of the contents of the tax books so destroyed or mutilated.

4. **Delinquent Lists:** COLLECTOR: OATH. The failure of the collector to return the delinquent lists of taxes under oath, does not affect the validity of the taxes, nor the right of the state to enforce its lien therefor.

5. **Constitution:** TAXES: LEVY. The limitation on taxation pre-

The State ex rel. Lewellen, Collector, v. Schooley.

scribed by article 10, section 11, of the Constitution, does not apply to valid indebtedness existing at the time of its adoption. Nor does one levy made to pay such indebtedness exhaust the power to levy, but such levies may be continued until the indebtedness is satisfied.

*Appeal from St. Clair Circuit Court.*—HON. CHAS. G. BURTON, Judge.

REVERSED.

*Johnson & Lucas* for appellants.

(1) Before the relator could recover he should have shown that the defendants were the owners of the property against which the action was instituted. (2) The back tax book is an execution, a command to the collector to institute an action for the collection of taxes —*vide* section 6836, Revised Statutes, and no provision is made for his turning the same over to his successor; he must collect all taxes thereon, or show to the court that he has exhausted all remedies given by law. Section 2396, Revised Statutes, authorizes and empowers sheriffs to deliver to their successors unexecuted writs; without such provision it would be the duty of the officer receiving the writ fully to execute the same. (3) The relator was possessed of no authority to place on the tax books or tax bills any tax that did not appear thereon at the time of his receiving the same. His act in placing tax in columns headed "Railroad" and "Total," was without authority and void. *Henry v. Bell*, 75 Mo. 192; *Higgins v. Ausmuss*, 77 Mo. 353. The action of the state auditor in directing the clerk to make out a new back tax book was unauthorized by any provision of law, and the clerk's action is clearly within the rule laid down in *Higgins v. Ausmuss*, 77 Mo. 353. (4) The failure of the assessor to verify the assessor's book by affidavit, as required by·law, invalidated his assessment. *Town of Warrensburg ex rel. Coburn v. Miller*, 77 Mo. 56; *State ex rel. Harvey v. Cook*, 82 Mo. 18; *Marsh*

*v. Supervisors*, 42 Wis. 502; *Plume v. Supervisors*, 46 Wis. 163; Cooley on Taxation, p. 289; *Johnson v. Elwood*, 43 N. Y. 431. (5) The delinquent lists were not verified by affidavit. Until the collector has exhausted the remedy provided by section 6754, *supra*, no authority exists to go further, and the evidence thereof is to be found in the affidavits required by law. *Thatcher v. Powell*, 19 U. S. C. C. (Wheaton) 119; Cooley on Taxation, p. ˙307. (6) The record shows that the levies for county purposes were in excess of the constitutional limit. When the county court exceeds its authority, all of its proceedings are void, hence, the whole levy for county taxes should have been stricken from the suit. Cooley on Taxation, pp. 295-6. (7) Section 4, article 10 of the Constitution, requires all property to be taxed in proportion to its value, and in accordance with said provision, the legislature, Revised Statutes, section 6881, has provided a rule for all assessors to ascertain and place an actual cash value thereon. These provisions of the constitution and the statute the assessors ignored and disregarded. The assessment is void. *Hamilton v. St. Louis, etc.*, 15 Mo. 3; *State v. North*, 27 Mo. 483; *Life Association v. Board*, 49 Mo. 518.

*Parkinson & Abernathy* and *C. J. Harrison* for respondent.

(1) The affidavit of the assessor to the assessment is not essential to confer jurisdiction of the subject matter of taxation. The verification is in no sense a judicial act on the part of the assessor, as the valuation of property, to some degree, at least, is, and it is against the general rule to find in the affidavit that which is always sought and found in the thing verified. In the case of *State v. Cook*, 82 Mo. 185, the decision does not depend on the assessor's affidavit, but upon the non-existence of any assessment or official act of the assessor for the taxes of 1874.

(2) The levies were severally made within the tax limit, as appears from the record, unless as claimed by appellants, a levy to meet a portion, exhausts the power, and makes the second levy to meet the balance of indebtedness existing at the adoption of the constitution of 1875, void. The constitution itself uses the term "taxes" in the exception clause, seeming to imply successive levies till such indebtedness is liquidated. Such construction is consistent with the general doctrine of the partial execution of powers. Though the second levy for back indebtedness is void, yet it is void only for the thirty cents levied for such back indebtedness. The statutory requirements and the facts show that it is a separate tax separately levied, separately extended on back tax column, and is not blended with other taxes, so as to be incapable of separation from them. The rule goes without question, that where the excess is distinct and separate, invalidity attaches only to the excess and not to the levies made for other objects within the powers and limits of the law. Const. Mo., art. X, § 11; Cooley on Taxation, pp. 295, 6. (3) The destruction of the tax books did not nullify or destroy the authority their creation and existence conferred The taxes were due, and the powers of the various officers remained unimpaired. Whether the amount should be ascertained by secondary evidence, or by a copy, or new book made under direction of the auditor, who is the superintending authority in revenue matters, makes but little practical difference. The state is not to be left to the mercy of midnight marauders, in the collection of her revenues. Sess. Acts 1872, §§ 90, 91, p. 102; 2 Wag. Stat. 1872, § 14, p. 1137; *Strain v. Murphy*, 49 Mo. 337. The cases of *Henry v. Bell*, 75 Mo. 192, and *Higgins v. Ausmuss*, 77 Mo. 353, go to the question of power, and not to the question of ascertaining in a proper way by secondary evidence the amounts due, the original evidence of which had been destroyed. (4) The same reasons as are given regarding the jurisdictional

character of the assessment, and not the affidavit of the assessor apply to the delinquent lists and collector's affidavit. Furthermore, we claim that the collector's affidavits are things going to the *remedy only*, and not to the jurisdiction of the tax lien proceedings in the circuit court. They are subject to legislative change or abolition, and have no jurisdictional force, and come into existence after lien attaches. Cooley on Taxation, 215, 219 ; R. S. 1879, § 6825, p. 1341 ; *Blossom v. VanCourt*, 34 Mo. 390 ; *McLaren v. Sheeble*, 45 Mo. 130 ; *McCready v. Sexton*, *supra*. (5) The curative provisions of the revenue law of 1872, section fifty-three, indicate a legislative intention to relieve as far as possible, from strained construction and technical niceties in the interpretation and administering of it. And the same or similar provisions are manifest to a greater degree in subsequent legislation.

BLACK, J.—This action was instituted by the collector of the revenue of St. Clair county to enforce the lien for back taxes for the years 1873, 1874, 1875, 1876, 1877, and 1878, against certain lands in that county which it is conceded, belong to the defendants. The township organization law was adopted and went into force in that county in May, 1872, and remained in force until August 1, 1877,

1. On the trial of this cause the relator made proof of the signature to the tax bill sued upon, and then offered it in evidence, to which objections were made on the alleged ground that the tax bill was not correctly certified from the back tax books. The tax bill appears to be formal and states the facts required by section 6837, Revised Statutes, and by that section became *prima facie* evidence that the amount claimed was just and correct. The law does not contemplate that this tax bill made out by the collector for suit shall be a copy of a part of the back tax book. It must state certain facts and be certified to by him, and when all this is done, it is made evidence. The objections made to the introduc-

tion of this tax bill did not appear upon its face, and were properly overruled, and so was the demurrer to the evidence interposed at the close of the plaintiff's case.

2.   It is agreed that the evidence offered on trial showed that three of the assessment lists made out by the township assessor for the township in which this land is situated, for the years 1873, 1874, 1875, and 1876 had no affidavit or oath of the assessor attached, and that the fourth assessment list had an affidavit written out, signed, but not sworn to by the assessor.   The law provides that the assessor should subscribe and append to the return of the assessment lists, an oath, the form of which is given, and which among other things must state "that the value attached to each parcel in the return is, as I verily believe, the full value thereof estimated according to law."   Acts of 1873, p. 114, sec. 16.   There is then no affidavit or oath whatever attached to these assessment lists, and they are wholly without such verification as the statute requires.   It must be conceded on all hands that an assessment is indispensable to the levy of a valid tax, no matter how that tax is to be collected.   The assessment lies at the very foundation of the exercise of the power to tax, and is the first and most essential step in the whole proceeding.   It has been said that the result of the action of the assessor is embodied in the assessment roll or list.   The statute provides how this roll or list shall be authenticated and a fair compliance with these statutory provisions in this behalf is essential. Cooley on Taxation, 289 ; *Warren v. Grand Haven*, 30 Mich. 24 ; *Dickinson v. Reynolds*, 48 Mich. 158.   While many cases are to be found, where informalities in the oath or affidavit, and the manner of attaching it to the roll or list, are held not to invalidate the assessment, still a total want of such affidavit, when required by law, has most generally been held to be a falal defect. *Marsh v. Supervisors*, 42 Wis. 502; *Plumer v. Supervisors*, 46 Wis. 163 ; *Johnson v. Ellwood*, 53 N. Y. 431 ; *Morrill v. Taylor*, 6 Neb. 236 ; *Lynam v. Anderson*, 9 Neb. 367.

It was held by this court, also, in the case of *State ex rel. Harvey v. Cook*, 82 Mo. 185, that a failure of the assessor to verify the assessor's book by affidavit as prescribed by the statute would defeat the collection of a tax based upon such assessment.

It is contended that the act of 1877 gives the collector authority to collect only upon voluntary payment or distraint of personal property, and that the enforcement of the tax lien has been transferred to the circuit courts, where whatever defences there may be can be heard in the usual course of litigated matters, and that for these reasons the former adjudications ought not to be adhered to. The effect of the law is to avoid those failures of the officers to follow the substantial requirements of the law in selling the property, under the former method. As the taxes are now enforced, there is much reason for holding that a measurably fair compliance with the assessment law should be regarded as sufficient, but all this will not justify the courts in upholding assessments which are in disregard of the plain provisions of the statute. Beyond doubt, it is competent for the legislature to dispense with the affidavit of the assessor, or, if not wholly dispensed with, to provide that a failure to attach such oath shall not render invalid the assessment, but in the absence of any such legislative declaration, the courts ought not so to hold. The constitution contemplates equal and uniform taxation. To accomplish this, there must be a uniform method of assessment and the law makes that the true value of the property. No more effectual method of inequality in taxation could be devised than that of a discrimination in assessed values. We must conclude, as the law stands, that the purpose of this affidavit was to insure just valuations of the property, and that the oath is material to the validity of the assessment. Section 53 of the act of 1872 (section 6710, Revised Statutes, 1879) provides that: "No assessment of property or charge for taxes thereon shall be considered illegal on account of any informality

in making the assessment, or in the tax lists," etc. This section does preserve the tax lists against informalities, but it cannot be said to wholly dispense with essential matters. For these reasons these taxes levied for the years before stated must be held to be void.

3. The fact that a mob of lawless persons took the back tax book of 1876 and obliterated the column headed "Railroad Tax," and that the back tax book of 1877 was in a like manner burned, did not affect the right of the collector to collect those taxes. It appears a new back tax book for 1877 was made by the county clerk, at the direction of the state auditor, from delinquent lists. It was proper enough to replace the book from the best evidence that could be procured. Nor did the mutilation of the one book, nor the malicious destruction of the other, prevent him from making up and certifying tax bills. Of course, the inquiry would be open, as to whether the tax bills stated the facts correctly and they could be tested by the next best evidence. All the books and papers relating to the assessment and levy of taxes are evidence to which he may resort.

4. The bill of exceptions shows that the delinquent lists for the various years were returned, but not under oath, one had a form of oath attached, but was neither signed nor sworn to ; another had an informal certificate, signed, but not verified, and the other had nothing attached. What might be the effect of this, were the collector endeavoring to sell, or if he had sold the property under the old procedure, is not necessary to be considered. The object of this provision of the law, requiring the lists to be returned under oath is to compel the collector to perform his duty in collecting the taxes, and to enable the county court to determine the amount for which he shall have credit. The lists in this case were returned and received, and the back tax book made up therefrom. The failure to return them under oath in no

way affects the justice or validity of the tax, nor the right of the state to enforce its lien therefor.

5. The limitation prescribed by section two, article ten, Constitution of 1875, does not apply as to valid indebtedness existing at the time of its adoption. One levy made to pay such indebtedness does not exhaust the power to make levies to meet such indebtedness. They may be continued until such indebtedness is discharged.

Judgment of the circuit court is reversed and the cause remanded.