State ex rel. v. Seahorn.

THE STATE *ex rel.* HAYES, *Collector, Appellant,* v.
SEAHORN, *Administrator.*

### Division Two, June 8, 1897.*

1. **Pleading:** ALLOWANCE OF TAX BILL. No pleading other than a tax bill is required on a demand by the county collector, in the probate court, against the estate of a decedent for back taxes, under section 7626, Revised Statutes 1889, requiring demands for personal taxes against the estates of deceased persons to be presented and allowed in the probate court, in the same manner as other demands, and under section 199 providing that the probate court shall determine all demands in a summary way without the form of pleading.

2. **Notice to Absent Taxpayer:** PRESUMPTION IN FAVOR OF OFFICER. In an action for the recovery of taxes, when it appears that the person against whom the tax bills were issued is liable to taxation, and that the assessor had authority and jurisdiction, it will be presumed that the assessor discharged his duty, and that the notices and blank assessment lists were left at the proper place within the time prescribed by the statute, which makes it the duty of the assessor to leave at the residence or place of business of each person required by law to list his property, in his absence or sickness, a notice requiring such person to make out a sworn statement of his property and return the same to him, before the assessor can make the assessment himself.

3. ———: DATE OF SUCH NOTICE. Such notices would begin to run only on the day after their delivery, and it therefore is immaterial whether they were dated or not.

4. **Absent Taxpayer:** LIST "LEFT" AT HIS RESIDENCE. The notice required by section 7532, Revised Statutes 1889, to be left at the usual residence or place of business of an absent taxpayer, to furnish a sworn statement of his property to the assessor, with the penalty that unless such statement is so furnished the assessor may make assessment, has no application to section 7567, which authorizes the assessor, in the absence or sickness of the head of the family, to make out a list of the property after viewing it himself, and leave a duplicate thereof with some member of his family over fifteen years, or with the owner himself if made out in his presence. By the former section no duplicate is required to be left, but a written or printed

*NOTE.—Decided March 23, and motion for rehearing denied June 8, 1897.

notice must be, requiring a sworn statement from the taxpayer; in the latter no notice is required, but the assessor makes the assessment from his own view, and leaves a duplicate thereof.

5. Assessor's Affidavit: STATUTE: SUBSTANCE. The oath prescribed by statute, to be attached to the assessor's book by him, must be followed, and if there is any material departure therefrom the assessment will be invalid. But a substantial compliance with the statutory form is all that is required.

6. ———: ———: ———. A case in which the assessor's oath, which is set out in the opinion, is *held* not to be a substantial departure from the statutory form.

*Appeal from Jackson Circuit Court.*—Hon. John W. Henry, Judge.

Reversed.

*H. M. Meriwether* for appellant.

(1) Under our statute no mere irregularity of any kind should invalidate the tax. The fact that the valuation determined by the assessor was placed in the assessment book for the year 1887 under the column headed "Valuation adjusted by the county board of equalization" was a mere irregularity. R. S. 1889, secs. 7563 and 7708; *Black v. McGonigle,* 103 Mo. 192; *Thomas v. Chapin,* 116 Mo. 396; *Railroad v. County Clerk,* 57 Mo. 223. (2) The notices delivered to Scruggs to list his property were sufficient. Absolute correctness and technical particularity are not required in such cases. R. S. 1889, secs. 7563, 7708, 7532; *Thomas v. Chapin,* 116 Mo. 396; *State ex rel. v. Phillips,* 102 Mo. 664; *Black v. McGonigle,* 103 Mo. 192; *State ex rel. v. Bank,* 120 Mo. 161; *State ex rel. v. Schooley,* 84 Mo. 447; Endlick on Con. of Stat., sec. 392; Wade on Notice, sec. 1160. (3) The affidavit of the assessor complied with all of the legal requirements. Every fact required by law to be stated in this affidavit is therein stated. Greater precision is not

necessary. R. S. 1889, secs. 7563 and 7708; *State ex rel. Miller v. Hutchinson*, 116 Mo. 399; *State ex rel. Brassfield v. Hurt*, 113 Mo. 90; *State ex rel. v. Bank*, 120 Mo. 161; *State ex rel. v. Phillips*, 102 Mo. 664; *Platte Land Co. v. City*, 11 Neb. 344. (4) Section 7567, Revised Statutes 1889, does not require that a copy of the assessment list be delivered to the owner in any case except where such copy is demanded, but even if this were not true, the failure to deliver such copy would not defeat the jurisdiction of the assessor, nor invalidate the tax. *Meyer v. Rosenblatt*, 78 Mo. 495; *Deane v. Todd*, 22 Mo. 90; *State ex rel. v. Railroad*, 113 Mo. 297; *Charley v. Kelley*, 120 Mo. 134. (5) In making assessments for personal taxes, where the person notified has refused to make a list, it is not necessary for the assessor to itemize and specify any particular property. The valuation in gross is sufficient. R. S. 1889, sec. 7564; Burgh. on Taxation, pp. 4, 238 and 245: *Adams v. Sleeper*, 24 Atl. 990; *Rockland v. Ulmer*, 84 Me. 503; Cooley on Taxation [2 Ed.], pp. 351 and 750. (6) Section 7569, Revised Statutes 1889, fixes June 1 as the date on which all persons become liable for taxes for the ensuing year. Therefore it was immaterial that Scruggs removed from Jackson county the September following the assessment made June 1, 1889, for the taxes of 1890. Cooley on Taxation [2 Ed.], p. 355; Burroughs on Taxation, sec. 7. (7) The objection to the school taxes that the clerk failed to enter them up in a separate school tax book, is purely technical, and besides it is not required by statute. R. S. 1889, secs. 8067 and 8094; *State ex rel. v. Railroad*, 113 Mo. 297; *Robbins v. Barron*, 33 Mich. 124; *State ex. rel. v. Harper*, 83 Mo. 670; *City of Rockland v. Ulmer*, 84 Maine, 503; *Railroad v. County Court*, 50 N. W. Rep. 937. (8) The failure of the school board to certify an estimate of the amount of funds

necessary was an immaterial variation from the statutory requirement, and should not invalidate the tax where they did certify the rate to be levied as in this case. *Railroad v. Gracey*, 29 S. W. Rep. 579. (9) This action was not brought under section 7626, Revised Statutes 1889, but under section 183, Revised Statutes 1889, providing for the proving up of taxes against the estates of deceased persons; hence the taxes for the year 1887 are not affected by the decision in the case of *State ex rel. v. Hoyt*, 123 Mo. 348. *State ex rel. v. Tittmann*, 103 Mo. 553; *Greeley v. Bank*, 98 Mo. 458; *State ex rel. v. Severance*, 55 Mo. 378.

*R. H. Field* for respondent.

(1) When there is no pleading filed by the plaintiff, or one that is fatally defective, the judgment is rightfully rendered against him and can not be reversed by this court for any error of the trial court, though such lack or defective pleading was not the reason of the trial court for the judgment it rendered. *Tate v. Barcroft*, 1 Mo. 163; *Wear v. McCorkle, Id.* 588; *Vaughan v. Daniels*, 98 Mo. 230. (2) The judgment in this proceeding could not have been rightfully for the plaintiff when he filed neither a petition nor statement of any cause of action nor any account against the defendant in the probate court. It was intended by section 7626, Revised Statutes 1889, that the tax bill should have a probative effect only in a suit for personal taxes, and not that it should be considered a pleading. *Vaughan v. Daniels*, 98 Mo. 230; *Oxley Stave Co. v. Whitson*, 34 Mo. App. 624; *Seligman v. Rogers*, 113 Mo. 643; *Watkins v. Donnelly*, 88 Mo. 322; *State ex rel. Brassfield v. Hurt*, 113 Mo. 94; *State ex rel. Miller v. Hutchinson*, 116 Mo. 399. (3) The giving of the notice required by section 7532, Revised

Statutes 1889, is the process, and the only process whereby the assessor can force the citizen to list his personal property for taxation or submit to any jurisdiction of the assessor to value or assess the same for the purpose of taxation, and an assessment by the assessor without such notice is not merely erroneous or irregular but is utterly void for lack of jurisdiction in the assessor to act upon the subject. *State ex rel. v. Spencer*, 114 Mo. 574; *State ex rel. v. Hoyt*, 123 Mo. 348; Cooley on Taxation [2 Ed.], pp. 288, 365, 660. (4) And the same rule applies to the failure of the assessor to give the other notices to the deceased of the pretended assessments which were made in his absence, required by section 7567 of the statutes, either by notifying him personally or by leaving a duplicate of such assessments with a member of his family. *Railroad v. Cass Co.*, 53 Mo. 18; Cooley on Taxation [2 Ed.], pp. 287, 288, 365, 660. (5) The assessment is void because the certificate of the assessor to the assessment books are not in statutory form. R. S. 1889, sec. 7571; *Marsh v. The Supervisors of Clark Co.*, 42 Wis. 515; *Dickinson v. Reynolds*, 48 Mich. 159; *Shattuck et al. v. Bascom*, 105 N. Y. 39; *Brevoort v. City of Brooklyn*, 89 N. Y. 128; *Merritt v. Village of Partchester*, 71 N. Y. 309; *Stebbins v. Kay*, 123 N. Y. 36; *State ex rel. Harvey v. Cook*, 82 Mo. 185; *State ex rel. Neill v. Phillips*, 102 Mo. 668. (6) The defects and omissions of the assessor's proceedings are not cured or obviated by either section 7563 or 7708. *Stephan v. Daniel*, 27 Ohio St. 527; *Servoll v. City of St. Paul*, 20 Minn. 511; *Matter of petition of Hearn*, 96 N. Y. 378.

BURGESS, J.—This suit was begun in the probate court of Jackson by the collector of the revenues of that county against the defendant, as administrator of the estate of Phineas T. Scruggs, to recover the State,

county, and school personal taxes, assessed and levied
for the years 1887, 1888, 1889 and 1890. There was
judgment in favor of plaintiff in the probate court,
from which defendant appealed to the circuit court of
said county, where, upon a trial *de novo*, there was
judgment for defendant; thereupon plaintiff appealed
to this court. There was no statement or pleading
filed in the cause, other than the back tax bill certified
to by the collector.

The case was tried upon the following agreed state-
ment of facts: It is agreed by and between plaintiff
and defendant in the above entitled cause, that said
cause may be tried and submitted upon the following
agreed statement of facts, to wit: That up to the
second of September, 1889, Phineas T. Scruggs was a
resident of Jackson county, Missouri, and since then to
the time of his death he resided in Wyandotte county,
Kansas. That in December, 1891, he died intestate at
his home on that date, in Wyandotte county, Kansas,
and that on and before the twentieth day of December,
1892, Thomas J. Seahorn was duly appointed as ad-
ministrator of the estate of said Phineas T. Scruggs in
Jackson county, Missouri, and duly qualified as such
administrator. That the back tax bill allowed as a
claim against the defendant as administrator by the
probate court as heretofore attached, purporting to
show personal back taxes due from the said Phineas T.
Scruggs on personal property for the years 1887, 1888,
1889 and 1890, was presented and signed by Elihu W.
Hayes, who was at the time of signing and issuing of
the same the duly acting and qualified collector of the
revenue within and for Jackson county, Missouri; that
the same was duly delivered to H. M. Meriwether.
That H. M. Meriwether is now, and was at the time of
presenting this tax bill to the probate court for allow-
ance, the duly appointed attorney of the collector of

Jackson county, under and pursuant to a contract in writing duly entered into by said collector with said H. M. Meriwether, by which the said H. M. Meriwether is entitled to a commission of ten per cent upon the sums actually collected and turned into the treasury in all back suits; which said contract was duly approved by the county court of Jackson county, as required by law. Said tax bill is in words and figures as follows:

"BACK TAX BILL.

"STATE OF MISSOURI, } ss.
"County of Jackson. }

"I, Elihu W. Hayes, collector of the revenue within and for the county of Jackson, in the State of Missouri, do hereby certify that the following amounts of personal taxes remain delinquent in favor of the several funds for the several years, and assessed against the party set opposite thereto, to wit:

| Name. | Years Delin- quent. | Valua- tion. | State Tax. | County Tax. | |
|---|---|---|---|---|---|
| Phineas T. Scruggs, 1100 E. 12th Street, and Hotel Woodland. | 1887 1888 1889 1890 | $25,000 25,000 25,000 60,000 | $100.00 100.00 75.00 180.00 | $ 87.50 25.00 87.50 360.00 | |

| | Kansas City School Tax. | K. T. R. R. | Total Tax. |
|---|---|---|---|
| 1887 | $125 00 | | $ 325 00 |
| 1888 | 112 50 | | 237 50 |
| 1889 | 125 00 | $12 50 | 300 00 |
| 1890 | 270 00 | | 810 00 |
| | | | $1,672 00 |
| Interest on above sum to date..... | | | 611 20 |
| | | | $2,283 20 |
| Collector's commissions........... | | | 342 48 |
| Attorney's fees................... | | | 228 32 |
| Total amount of taxes for all the years..... | | | $2,854 00 |

State ex rel. v. Seahorn.

"In witness whereof I have hereunto set my hand at Kansas City in said county and State, this 3rd day of November, 1891.          ELIHU W. HAYES,
                                                    "Collector."
On the back of said bill for taxes is the following:

"TAX BILL.

"State of Missouri, at the relation and to the use of Elihu W. Hayes, collector of Jackson county, v. Phineas T. Scruggs. Statement of Taxes and Costs. December 22nd, 1892. Notice of the within claim is hereby waived.          T. J. SEAHORN, Admin.

"Allowed on the within demand by the probate court of Jackson county the sum of $2,854 and 00 cents and ordered to be assigned to the 3rd class and to be paid accordingly.

"Witness my hand and seal of said court hereunto affixed at office in Kansas City, Mo., this 23rd day of December, 1892.          "JAMES H. SMITH, Clerk."

{ SEAL OF PROBATE COURT }

It is admitted that the tax for the year A. D. 1887, described in the above tax bill, was based so far as the assessment book is concerned upon the assessment on page 251, volume 6, of the assessor's book, entitled on the outside "Assessor's Book, Personal Property, Range 33, 1887, Jackson County," and on the inside at top of each page "Assessor's List of Personal Property, Jackson County, Missouri, for the year 1887," in words and figures as follows:

| | | | |
|---|---|---|---|
| Name | | | Scruggs, Phineas T. |
| Residence | | | |
| Horses | No. —— | $—— | |
| Mules and asses | No. —— | —— | |
| Neat cattle | No. —— | —— | |
| Sheep | No. —— | —— | |
| Hogs | No. —— | —— | |
| Moneys, notes, bonds, and other credits | | —— | |
| All personal property | | —— | |
| Total valuation of the assessor | | —— | |
| Total valuation as adjusted by the county board of equalization | | $25,000 | |

The assessor made out and returned to the county court in due time a fair copy of the assessor's book of said year.

At the instance of the plaintiff it is admitted by the defendant that taxes were extended upon said copy in the same line, against said Phineas T. Scruggs, by the county clerk, since then as follows:

| | |
|---|---:|
| State tax ......... ..................... ............ | $ 100 00 |
| County tax....... .......................... ....... | 87 50 |
| Kansas City school tax.... . ......... ............. | 125 00 |
| Kaw township railroad tax ......................... | 12 50 |
| Total ................................... | $ 325 00 |

Attached to the end of this volume of the said assessor's book for that year is this certificate verifying the said book in words and figures as follows:

"STATE OF MISSOURI, }
"County of Jackson.  } ss.

"Thomas H. Edwards, County Assessor, within and for the County and State aforesaid, being duly sworn, upon his oath states that he has made diligent efforts to ascertain all taxable property being and situate in the county aforesaid on the first day of June last past, and the actual cash value thereof, and that so far as he had been able to ascertain the assessment thereof is correctly set forth in Assessor's book marked 1887, as returned and verified by him; that said assessment book consists of volumes One (1), Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), Eight (8), and Nine (9); that this is volume 6 of said assessor's book, and that he has made diligent efforts to ascertain the actual cash value of all that part of the whole taxable property being and situate in said county on the first day of June last past that is described herein, and so far as he has been able to ascertain the

assessment thereof is correctly set forth in the foregoing pages of this volume.

"THOMAS H. EDWARDS,
"County Assessor of County of Jackson, Missouri.

"Sworn and subscribed to before me this 10th day of January, A. D. 1887.

"M. S. BURR,
"Clerk of County Court.
"(No Seal)          "By J. W. SWEARINGEN, D. C."

That said assessor's book was by him verified in no other form or manner, nor was the copy thereof upon which the alleged taxes were levied and extended otherwise verified by said assessor. It is admitted by the parties to this cause that the taxes for the year 1888, described in the tax bill, were based so far as the assessor's book is concerned upon the following as the assessment in the assessor's book for that year:

| | |
|---|---|
| Name.......................................... | Scruggs, P. T. |
| Residence ...................................... | 1111 East 12th |
| Horses.......................................No. ——— $——— | |
| Mules and asses ..........................No. ——— ——— | |
| Neat cattle........ . ........................ ..No. ——— ——— | |
| On the same line with "All Personal Property," and under the column of "All Other Personal Property." | $25,000 |
| Under the column "Total Valuation by Assessor"...... | 25,000 |

The assessors made and returned to the county court in due time a fair copy of the assessor's book for said year.

It is admitted by the parties hereto that, after the said proceeding of the county assessor for the year 1888, the county clerk extended the taxes thereon, as follows:

| | |
|---|---|
| State tax..................... ...................... . | $ 100 00 |
| County tax................................................ | 25 00 |
| Kansas City school tax............................... | 112 50 |
| Total tax...................................... | $ 237 50 |

That the foregoing proceedings for the year 1888 are contained in a book in the county clerk's office, entitled on the outside "Assessor's Book, Personal Property, Range 33, 1888, Vol. 6, Jackson County, Mo.," and on the inside at the top of each page, "Assessor's List of Personal Property, Jackson County, Missouri, for the year 1888."

The certificate in this book of the county assessor, and the copy thereof upon which the alleged taxes were levied and extended are the same as the certificate of the one for the preceding year except as to date and volume.

It is admitted by the parties hereto that the taxes described in the tax bill aforesaid for the year 1889 is based so far as the assessor's book is concerned upon the following proceedings found in book entitled on the outside "Assessor's Book, Personal Property, Range 33, 1889, Vol. 2, Jackson County, Mo., Page 4333," and on the inside at the top of each page the same as in preceding years, except as to date.

The assessments, as there made, read as follows:

Name ...................................... Scruggs, P. T.
Residence.................. ................ Hotel Woodland.
Horses.................................No. ——— $———
Mules and asses........ ..  ............. No. ——— — Est.
Neat cattle..... .......... ...........No ——— ———
Sheep.................................. ...No. ——— ———
Hogs .................................No. ——— ———
Moneys, bonds, notes and other credits................ ———
All other personal property............................ $25,000
                                                          ————
  Total valuation of the assessor................ $25,000

The assessor returned to the county court in due time a fair copy of said assessor's book.

And it is admitted by the parties hereto that on said copy of said assessor's book the county clerk of Jackson county extended taxes as follows:

State ex rel. v. Seahorn.

| | |
|---|---|
| State tax........................................... | $ 75.00 |
| Kansas City school tax........... . ..................... | 125.00 |
| County tax.... ...................................... | 87.00 |
| K. T. R. R. tax... ............................... .. | 12.50 |
| Total tax.................................. | $300.00 |

The certificate to this assessment book, made by the assessor, and the jurat thereto, and copies thereof upon which the alleged taxes were levied, are the same as that of the preceding years aforesaid, except as to date and volume.

It is admitted that the taxes for the year 1890, described in the tax bill aforesaid, were based upon the following proceedings, so far as the assessor's book is concerned, found in book entitled on the outside, "Assessor's Book, Personal Property, Range 33, 1890, Vol. 12, Kansas City, Jackson County, Mo.," and on the inside as in preceding years, except as to date "on page 418," in words and figures as follows:

| | | |
|---|---|---|
| Name.... ................... ..............Scruggs, Phineas T. | | |
| Residence...............................................City. | | |
| Horses.................. ...................No. ——— $——— | | |
| Mules and asses........................No. ——— ——— | | |
| Neat cattle......................... ........No. ——— ——— | | |
| Sheep........................... .......No. ——— ——— | | |
| Hogs............................. ...............No. ——— ——— | | |
| Money, bonds and other credits....................... ——— | | |
| On the same line with "All Personal Property," and under the column of "All other Personal Property".. | $60,000 | |
| Total valuation by the assessor........... .... | $60,000 | |
| Total valuation as adjusted by the county board of equalization........ ................. $——— | | |
| Total valuation as adjusted by the state board of equalization................. ............ | $60,000 | |

The assessor made and returned to the county court in due time a fair copy of said assessor's book.

It is also admitted that after these proceedings of the assessor, the county clerk of Jackson county ex-

tended taxes on said copy of the assessor's book as follows:

| | |
|---|---:|
| State tax | $180.00 |
| County tax | 360.00 |
| Kansas City school tax | 270.00 |
| Total tax | $810.00 |

The certificate of the county assessor to this book of the county assessor and the copies thereof, upon which the alleged taxes were levied and extended, are the same as the certificate to the other before copied except as to date and volume.

It is also admitted that tax books for the use of the county collector for the several years were duly and legally made out, if the assessments were legal, and that the alleged taxes shown and charged on said tax books for the several years are correctly set forth in the back tax bill hereto attached, which is made a part hereof, and none of said alleged taxes have been paid.

The defendant makes no objection to the form or substance of the certificate of the county clerk attached to either of the tax books the years herein involved.

It is admitted by plaintiff that it does not appear from the records or files of the county assessor, or other public office, that P. T. Scruggs made any returns of his personal property for the years aforesaid for which the tax bill has issued.

It is admitted by the plaintiff that no claim is made for the year 1891. The foregoing as evidence shall be read at the option of either party in this cause at the trial of the cause. Either party may offer other evidence concerning the assessments in question, provided that the same is not contradictory of the foregoing.

H. M. MERIWETHER,
Attorney for Plaintiff.
R. H. FIELD,
Attorney for Defendant.

Here the plaintiff rested its case.

Thereupon defendant introduced and read in evidence the following stipulation as to evidence and the exhibits numbered 2, 3 and 5 thereto attached:

"It is agreed that the following are facts and may be read in evidence, subject to objections by plaintiff as incompetent, irrelevant, immaterial, and such other objections as may be made at the time the evidence is offered. That P. T. Scruggs being absent from his home when the county assessor called there for a list of his property, the county assessor of Jackson county delivered to the wife of P. T. Scruggs, at his residence in said county, a blank assessment list and notice for each of the years 1887 to 1890, inclusive, a copy of which is here shown and marked "Exhibit 3," and that each of said blank lists was the same as here shown except as to years, and name of assessor; that said Scruggs made no return of his property for either of said years; and that after ten days and within less than twenty days after the delivery of the list and notice for each year, the assessor, in the absence of said Scruggs, proceeded to make, and did make, the assessments for each of said years of the personal property of said Scruggs as shown in the assessment books, copied in the agreed statement of facts, without any further notice of either of such assessments, and none was afterward given by the assessor to said Scruggs and no copy of either of such assessments was delivered by the assessor, or any deputy, to any member of the family of said Scruggs, though he had a wife in said county at his home during all of these years here in question over the age of fifteen years and he himself was here till September 2, 1889. At the instance of the plaintiff it is admitted that the deceased Scruggs never made any objection to either of such assessments before the board of equalization or board of appeals of said county.

"2.   That the orders of county court copied in the certified copy dated December 19, 1893, are a full and true copy of the orders levying the county taxes in question.   Exhibit 2.

"3.   That the proceedings of the Kansas City school board for the years 1887 and 1888 and 1890 and upon which the county clerk extended the taxes upon the personal tax books for those years are the same as those for the year 1889, filed May 6th, 1889, except as to the dates and rate of taxation for those years.   That it was upon those proceedings of the school board in the years 1887, 1888, 1889 and 1890 that the school taxes for each year sued for were extended by the county clerk upon the personal tax books respectively in said years.   The said proceedings of the Kansas City school board for the year 1889 being in following words:

"Exhibit 3.   That said school taxes were extended and charged upon the assessment and tax books as shown by the agreed statement of facts and not otherwise. That the county clerk made no levy of any of the school taxes in question other than to extend the same in the assessment and tax books as shown by the agreed statement of facts.   This 16th day of January, 1894.

"H. M. MERIWETHER,
"Attorney for Collector.
"R. H. FIELD,
"Attorney for Defendant."

Plaintiff also objects to the evidence offered by defendant concerning the assessment lists and notice for the reason that it having been admitted that the assessor and board of equalization had jurisdiction of the person and property of P. T. Scruggs it is not competent to attack the proceedings of the assessor and board of equalization by oral evidence in a collateral proceeding.   Objections overruled, to which ruling of

the court the plaintiff at the time excepted and no other objection to agreed statement of facts offered by defendant was made by the plaintiff.

Defendant here proved to the court that at the time of signing the first agreed statement of facts herein—the one introduced in evidence by the plaintiff— that the defendant and his attorneys were totally ignorant of the manner in which the taxes in question were levied and as to how they were extended in tax books shown in the agreed statement of facts introduced by defendant herein.

"Exhibit 5:

"STATE OF MISSOURI, } ss.
"County of Jackson, }

"I hereby certify that at a meeting of the board of directors of the school district of the city of Kansas, Jackson county, Missouri, held on the second day of May, 1889, an estimate for the levy of a tax of five mills on the dollar valuation, upon all the taxable property of the school district at its assessed valuation and all statements of merchants and manufacturers doing business in said district, was made by the adoption of the following resolution, to wit:

"*Be it resolved*, That the school district of the City of Kansas, County of Jackson, State of Missouri, does hereby for the year 1889 levy a tax of four and one half mills on the dollar valuation upon all property in the above described school district, and all statements of merchants and manufactures doing business in said district for school purposes, during the ensuing school year; and also does hereby levy a tax of four tenths of one mill on the dollar valuation on all property in the above described school district, together with the statements of merchants and manufactures doing business in said district for the payment of the interest coming due upon the indebtedness of said district during the

ensuing school year; and also does hereby levy a tax of one tenth of one mill on the dollar valuation on all property in the above described school district, together with the statements of merchants and manufacturers doing business in said district, for the purpose of constituting a *sinking fund* to be used in the redemption of the outstanding bonds of the district. *In witness whereof*, I hereunto set my hand and affix the official seal of the school district of the City of Kansas, Jackson County, Missouri, this fourth day of May, 1889.

"Jos. S. Norman,

"Secretary *pro tem.* of the school
district of the City of Kansas, Mo.

"State of Missouri, ⎫
"County of Jackson. ⎬ ss.

"I hereby certify that at the election held in the school district of the City of Kansas, county of Jackson, and State of Missouri, on the second day of April, A. D. 1889, a proposition to increase the rate of taxation for school purposes to four and one half mills was submitted to the voters of said school district, and that the result of the vote on said proposition at said election was as follows:

For the increased rate.. ... ..... .. ............. ........ 5,051 votes
Against the increased rate.. . .. ....................... 105 votes

and that the rate of taxation so voted is four and one half mills. *In witness whereof*, I hereunto set my hand and affix the seal of said school district on this second day of May, A. D. 1889.

"Jos. S. Norman,
"Secretary *pro tem.* school district of
City of Kansas, Mo."

"Exhibit 3.

"1889.    Assessment list.    Jackson County, Missouri:

"(For State and County Taxes, 1890.)    This list will not be called for, but must be returned promptly,

as stated in the following notice, signed and verified under oath or affirmation. Such oath can be made before the assessor or deputy without cost. Parties not complying with notice will be assessed double, as required by law.

"To P. T. Scruggs,

Residence No.      Hotel Woodland,    Street.
Business No.                           Street.
Occupation.

"Sir: You are hereby required to list your personal property within ten days from this date according to law upon this blank, and deliver this blank, with the list hereon, to me at my office, on or before the —— day of ——, 1889.

"GEORGE N. PETTY, Assessor.

"By KNIGHT, Deputy Assessor.

"*List of Taxable Property* belonging to or under the control of ———————— of Jackson County, State of Missouri, on the first day of June, 1889.

[Here follows Blank List.]

"Bring this blank to county assessor's office, county court house, Kansas City, Mo.

"Attend to same promptly. If you delay you will forget until increased assessments, penalties and costs may be saddled upon you."

"Exhibit No. 2:

"STATE OF MISSOURI, ⎱ ss.
"County of Jackson. ⎰

"*In the county court May term, 1887. Be it re-membered*, That at the term aforesaid, and on the 17th day of said month, among other proceedings, the following were had and made, viz.: The court orders that taxes for the year 1887 be levied as follows: County revenue fund, 20c. on the $100 valuation; bridge fund, 10c. on the $100 valuation; road fund, 5c. on the $100

valuation; Blue Tp. R. R. fund, 20c. on the $100 valuation; Kaw Tp. R. R. fund, 5c. on the $100 valuation; special interest fund, 5c. on the $100 valuation; road poll tax, $3.00.''

And afterward, to wit, at the May term, 1888, and on the twenty-second day of said month, among other proceedings the following were had and made, viz.: ''The court having the levy of taxes for the year 1888 under consideration it is ordered that taxes be levied as follows for the year 1888:

''For road purposes, 10c. on the $100 valuation; for bridge purposes, 10c. on the $100 valuation; for Blue Tp. R. R. tax, 5c. on the $100 valuation; for poll tax, three dollars or three days' work.''

And afterward, to wit, at the May term, 1889, and on the eighth day of said month among other proceedings the following were had and made, viz.: ''The matter of levying taxes for the year 1889 being under consideration, it is ordered that taxes be levied for said year as follows:   County revenue tax, 20c. on the $100 valuation; road tax, 5c. on the $100 valuation; bridge tax, 10c. on the $100 valuation; special interest tax, 5c. on the $100 valuation; Kaw Tp. R. R. tax, 5c. on the $100 valuation; Westp't Horse R. R. tax, 50c. on the $100 valuation; Blue Tp. R. R. tax, 20c. on the $100 valuation.''

And afterward, to wit, at the May term, 1890, and on the twenty-first day of said month, among other proceedings the following were had and made, viz.: ''It is ordered by the court that taxes be levied on all taxable property in the County of Jackson for the year 1890 as follows:   County revenue tax, 20c. on the $100 valuation; bridge tax, 10c. on the $100 valuation; road tax, 5c. on the $100 valuation; special interest tax, 30c. on the $100 valuation; Blue Tp. R. R. tax,

10c. on the $100 valuation; VanBuren Tp. R. R. tax, $1.50 on the $100 valuation.

"I, M. S. Burr, clerk of the county court within and for the county aforesaid, do hereby certify that the foregoing is truly copied from the original order of record in my office. *In witness whereof*, I have here-unto set my hand and affixed the seal of said court, at office in the city of Independence, this nineteenth day of December, A. D. 1893.

"M. S. BURR, Clerk.

"By J. W. SWEARINGEN, D. C."

Here defendant rested his case.

This was all the evidence.

Thereupon the defendant asked the court to declare the law as follows:

1. The court declares the law to be that neither the files nor the record in this cause disclose any lawful claim or cause of action filed against the defendant. The finding will therefore be for the defendant on the record.

2. The court declares the law to be that there was no valid assessment by the assessor of Jackson county for the year 1887 in the assessor's book for that year, read in evidence, against Phineas T. Scruggs, or P. T. Scruggs, the deceased. Hence the tax for that year is void.

2a. The court declares the law to be that the assessments for every year shown are void, because the notices to deceased to list his property, left with the wife of deceased, were unauthorized and void.

3. The court declares the law to be that the assessments in the assessor's books for each of the years in question are void, because the affidavit to each of such books is not in the form prescribed by the statute. And the finding must therefore be for the defendant.

4.  The court declares the law to be that if it believes from the evidence that the assessments for the years 1887, 1888, 1889 and 1890, described in the tax books of those years, were made by the assessor in the absence of P. T. Scruggs, and that no notice thereof was given to him, and that no copy thereof was left for him with any member of his family for either of such years, then the finding should be for defendant as to those years.

5.  The court declares the law to be that the assessments for each and all the years shown in evidence were void because they do not describe the personal property of the deceased that was valued by the assessor, and do not conform to the statute governing the cases where no description of property is required.

6.  The court declares the law to be that it being admitted by the evidence that the deceased had ceased to reside in this State before the pretended levy of county or school taxes for 1890, the court must find for the defendant as to these taxes for that year.

7.  The court declares the law to be that if it believes from the evidence that the school taxes set forth in the tax bill read in evidence were never entered by the clerk of the county court in a separate book, known as "School Tax Book," but that the same was extended by said clerk only in the same tax book with the other taxes named in the tax bill in each of the years in question, then as to such taxes the finding must be for the defendant.

7a.  The court declares the law to be that upon the admitted facts the taxes for all the years in question are void, because no estimate of the amount of funds necessary to sustain the schools of their district, or for any other purpose authorized by law, was for either year certified or forwarded to the county clerk

by the school board of the City of Kansas or Kansas City.

8. If the court believes from the evidence that the county court never caused to be entered of record the amount to be raised for county purposes in or for either of such years, then there was no valid levy of taxes for either of such years, and the finding as to the county taxes set forth in the tax bill must be for the defendant.

8a. The court declares the law to be that upon the admitted facts in this case the county taxes shown in the tax bill are all void.

Of which declarations the court gave those numbered 2, 2a, 3, 4 and 8a, to the giving of which declarations plaintiff then and there excepted and still excepts, and refused to give declarations numbered 1, 5, 6 and 8, to the refusing of which defendant then and there excepted.

I. The point is made by defendant that no pleading, or statement of any cause of action, nor any account against the estate of Scruggs was filed in the probate court, so that there is nothing upon which a judgment could stand.

By section 7626, Revised Statutes 1889, it is provided that "personal tax bills shall be presented and allowed against the estates of deceased or insolvent debtors, in the same manner and with like effect as other indebtedness of said debtors." This provision clearly has reference to procedure in the presentation of demands against the estates of deceased persons in the probate court, and the estates of insolvent persons in the hands of assignees or receivers. It has no application to suits brought on back tax bills in the circuit court in which pleadings are required by the code of civil procedure, and in which back tax bills are required by that section to be filed with the petition. The personal back taxes due by deceased were a demand

SUPREME COURT OF MISSOURI,

against his estate. *The State ex rel. Ziegenhein v. Tittmann*, 103 Mo. 553.

Section 199, Revised Statutes 1889, of the administration law, provides that the probate court "shall hear and determine all demands in a summary way without the form of pleading." The personal back taxes due by deceased were a demand against his estate, and no pleading or statement other than the back tax bill itself was necessary. The authorities to which we have been cited by defendant as announcing a different rule, are either cases that originated in the circuit court, or upon accounts in probate court, which were indefinite. *Watkins v. Donnelly*, 88 Mo. 322; *Seligman v. Rogers*, 113 Mo. 642; *Vaughan v. Daniels*, 98 Mo. 230; *Oxley Stave Co. v. Whitson*, 34 Mo. App. 624. They are not, we think, authority upon this question.

II. It is insisted by plaintiff that the law, as declared by the court with special reference to the taxes for the year 1887, to the effect that there was no valid assessment by the assessor for that year against Phineas T. Scruggs, deceased, and the tax for that year void, was evidently based upon the fact that the assessment for that year was placed in the column of the assessor's book under the head of "Total Valuation as Adjusted by the County Board of Equalization;" that there was no other evidence upon which to predicate such an instruction. But defendant does not place the action of the court in declaring the taxes for that year void upon that ground, but upon the ground as declared by the court with respect of the taxes for all the years sued for, that the assessments for every year shown are void, because the notices to deceased to list his property left with the wife of deceased were unauthorized and void, because of the failure of the assessor to comply with the behests of the

following sections of the Revised Statutes of 1889, which were then in force, to wit:

"Section 7531. TIME OF MAKING ASSESSMENTS— LISTS TO CONTAIN WHAT? The assessor or his deputy or deputies shall, between the first days of June and January, and after being furnished with the necessary books and blanks by the county clerk, at the expense of the county, proceed to take a list of the taxable personal property in his county, town or district, and assess the value thereof in the manner following, to wit: He shall call at the office, place of doing business, or residence of each person required by this chapter to list property, and shall require such person to make a correct statement of all taxable property owned by such person or under the care, charge or management of such person, except merchandise which may be required to pay a license tax, being in any county in this State, in accordance with the provisions of this chapter; and the person listing the property shall enter a true and correct statement of such property in a printed or written blank, prepared for that purpose, which statement, after being filled out, shall be signed and sworn to, to the extent required by this chapter, by the person listing the property, and delivered to the assessor. . . . . . . .

"Section 7532. PROCEDURE IN CASE OF FAILURE TO LIST PROPERTY. If any person required by this chapter to list property shall be sick or absent when the assessor calls for a list of his property, the assessor shall leave at the office, the usual place of residence or business of such person, a written or printed notice requiring such person to make out and leave at the place named by said assessor, on or before some convenient day named therein, not less than ten days nor more than twenty days from the date of such notice

a sworn statement of the property which he is required to list, and shall leave with such notice a printed or written blank for the statement required of such person. The date of leaving such notice and the name of the person required to list the property shall be carefully noted by the assessor; and if any such person shall neglect or refuse to deliver the statement, properly made out, signed and sworn to as required, the assessor shall make the assessment, as required by this chapter. . . . . . . .

"Section 7535. ASSESSOR TO MAKE LIST WHEN NONE IS GIVEN. Whenever there shall be any taxable property in any county, and from any cause no list thereof shall be given to the assessor in proper time and manner, the assessor shall himself make out the list, on his own view, or on the best information he can obtain; and for that purpose he shall have lawful right to enter into any lands and make any examination and search which may be necessary, and may examine any person upon oath touching the same.

"Section 7564. VALUATION TO BE PLACED ON PROPERTY AND ORDER OF ARRANGEMENT. The assessor shall value and assess all the property on the assessor's books according to its true value in money at the time of the assessment; and all other personal property shall be valued at the cash price of such property at the time and place of listing the same for taxation. . . . . . . .

"Section 7567. DUPLICATE LIST TO BE LEFT WITH WHOM. Whenever an assessment of property is made in the absence of the head of the family, a duplicate list of such assessment shall be left with some member of the family of not less than fifteen years of age, and shall deliver a copy of the assessment to the owner at the time of making said assessment, if demanded by such owner."

Upon this question the agreed statement of facts is as follows: "That P. T. Scruggs being absent from his home when the county assessor called there for a list of his property, the county assessor of Jackson county delivered to the wife of P. T. Scruggs, at his residence in said county, a blank assessment list and notice for each of the years 1887 to 1890 inclusive, a copy of which is here shown and marked 'Exhibit 3.' That each of said blank lists are the same as here shown except as to years and the name of the assessor. That said Scruggs made no return of his property for either of said' years, and that after ten days, and within less than twenty days after the delivery of the list and notice for each year, the assessor, in the absence of said Scruggs, proceeded to make, and did make, the assessment for each of said years of the personal property of said Scruggs as shown in the assessment book, copied in the Agreed Statement of Facts." . . . . . . .

Exhibit 3, mentioned in the agreed statement, as follows:

"1889.    Assessment list.    Jackson county, Missouri.

"(For State and county taxes, 1890.)

"This list will not be called for, but must be returned promptly, as stated in the following notice, signed and verified under oath or affirmation. Such oath can be made before the assessor or deputy without cost. Parties not complying with notice will be assessed double, as required by law.

"To P. T. Scruggs,

  Residence No.      Hotel Woodland,      Street.
  Business No.                                Street.
  Occupation.

"Sir:   You are hereby required to list your personal property within ten days from this date accord-

ing to law upon this blank, and deliver this blank, with the list thereon, to me at my office.

"GEORGE N. PETTY, Assessor.

"By KNIGHT, Deputy Assessor.

"*List of taxable property* belonging to or under the control of ——— of Jackson county, State of Missouri, on the first day of June, 1889.

"[Here follows blank list.]

"Bring this blank to county assessor's office, county court house, Kansas City, Missouri.

"Attend to same promptly. If you delay you will forget until increased assessments, penalties, and costs may be saddled upon you."

It is the duty of the assessor or his deputies, between the first days of June and January, to call at the office, place of doing business, or residence of each person required by law to list his property for the purposes of taxation, and if any such person be sick or absent when the assessor calls for a list of his property, the assessor must leave at the office, the usual place of residence or business of such person, a written or printed notice requiring such person to make out and leave at the place named by said assessor on or before some convenient day therein named, not less than ten nor more than twenty days from the date of such notice, a sworn statement of the property which he is required to list, and to leave with such notice a written or printed blank for the statement required, of such person. The date of leaving such notice and the name of the person required to list the property is required to be carefully noted by the assessor, and if any such person neglect or refuse to deliver the statement, properly made out, signed and sworn to as required, the assessor is required to make the assessment. Secs. 7531, 7532, *supra.*

By the agreed statement it is admitted that the notices and blank assessment lists were delivered to Scruggs' wife at his residence in his absence from home, but it does not appear at what time, nor do the notices bear any date.   The notice required the lists of the property to be returned in ten days from the date, and to be delivered to the assessor at his office. Scruggs failing to comply with the notices, the assessments were made by the assessor.   It is claimed by defendant that, as it does not appear at what time the notices were left at Scruggs' residence, the assessments were without authority and void.   But we do not concur in this view.   This being an action for the recovery of taxes and it appearing that Scruggs was liable to taxation, and that the assessor had authority and jurisdiction, the presumption will be indulged that the assessor and his deputies discharged their duty, and that the notices and blank assessment lists were left at his place of residence within the time prescribed by statute.

The fact that the notices were not dated makes no material difference as the time would only begin to run on the day after their delivery in any event.   Endlich on Interpretation of Statutes, sec. 392.   Besides the facts agreed upon show "that the assessor waited more than ten days in each instance before making out the assessment."   Moreover, the same strict compliance with the provisions of the statute is not required in cases of this character, as in case of sale of property for taxes without judgment.   In cases like the one in hand, Scruggs could have appealed from the assessment and gone before the court of appeals for redress; or when sued, he could avail himself of any valid defense that the law affords him against the payment of the taxes, while in the other case no such opportunity as that in

case the taxes are sued for, is open to him or his legal representative.

As was said in *Rockland v. Ulmer*, 84 Me. 503: "It gives the citizen a day in court in which to show cause why he should not pay. The anterior proceedings, therefore, do not need to be scrutinized so closely. If it appear that the citizen was liable to taxation, and that the assessor had proper authority and jurisdiction which he did not exceed, minor irregularities in mere procedure, which do not increase his share of the public burden, nor occasion him any other loss, should not prevent a recovery.''

All taxation is burdensome, yet it is the duty of every citizen to bear his portion of the burden, and no taxpayer should be permitted to escape doing so, upon a mere technicality which in no way materially affects his rights.

Section 7567, *supra*, has no application to this kind of case. That section only applies when the head of the family, whose duty it is to furnish a list of the taxable property, is sick or absent when the assessor calls for a list of the property, and the list is made out by the assessor on his own view, or from information derived from other sources. Then a duplicate list of such assessment is required to be *left* with some member of the family, not less than fifteen years of age, or, if the list be made out in the presence of the owner, then it is the duty of the assessor to deliver to such owner a copy of the assessment if demanded by such owner.

In the first instance the statute does not require that the duplicate list shall be sent or served, but that it shall be *left* with some member of the family, not less than fifteen years of age, which clearly shows that it is only when an assessment of property is made at the residence of the owner, in the absence of the head

of the family, and has no application to a case where the assessment is made by the assessor after failure or refusal by the property owner to furnish to him a list of his property. When the statute says *left*, it means at the time when and place where the list is made. Secs. 7531, 7532, 7535, 7564, 7567, *supra*.

III. The court ruled that the affidavit of the assessor was not in the form prescribed by statute, and by reason thereof the assessments for all the years were absolutely void. It is conceded by counsel for plaintiff that the affidavit of the assessor attached to the assessment books is not in the exact form prescribed by the statute, but he insists that the affidavit is in substantial compliance therewith, and that the court committed error in holding that such a variance would invalidate the assessments.

Section 7571, Revised Statutes, is as follows: "The assessor, except in St. Louis city, shall make out and return to the county court, on or before the twentieth day of January in every year, a fair copy of the assessor's book, verified by his affidavit annexed thereto, in the following words, to wit:

"———, being duly sworn, makes oath and says that he has made diligent efforts to ascertain all the taxable property being or situate, on the first day of June last past, in the county of which he is assessor; that, so far as he has been able to ascertain the same, it is correctly set forth in the foregoing book, in the manner and the value thereof stated therein, according to the mode required by law."

The words "in the manner and the value thereof stated therein according to the mode required by law," were omitted in each of the affidavits of the assessor attached to his books furnished to the county court, his affidavit to the book of 1887 being as follows:

"STATE OF MISSOURI, ⎱ ss.
"County of Jackson. ⎰

"Thomas H. Edwards, County Assessor, within and for the County and State aforesaid, being duly sworn, upon his oath states that he has made diligent efforts to ascertain all taxable property being and situate in the county aforesaid on the first day of June last past, and the actual cash value thereof, and that so far as he has been able to ascertain, the assessment thereof is correctly set forth in Assessor's book marked 1887, as returned and verified by him; that said assessment book consists of volumes One (1), Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), Eight (8), and Nine (9); that this is volume 6 of said Assessor's book, and that he has made diligent efforts to ascertain the actual cash value of all that part of the whole taxable property being and situate in said county on the first day of June last past that is described herein, and so far as he has been able to ascertain, the assessment thereof is correctly set forth in the foregoing pages of this volume.

"THOMAS H. EDWARDS,

"County Assessor of County of Jackson, Missouri.

"Subscribed and sworn to before me this 10th day of January, A. D. 1887.

"M. S. BURR,

"Clerk County Court.

"By J. W. SWEARINGEN, Deputy Clerk."

The certificate of the assessor to his books for all the years is the same. The legislature having prescribed the form of oath to be taken by assessors, that form must be followed, and if there is any material departure therefrom the assessment will be invalid. *Shattuck et al. v. Bascom*, 105 N. Y. 39; *Dickison v. Reynolds*, 48 Mich. 158; *Brevoort v. The City of Brooklyn*, 89 N. Y. 128; *Marsh and others v. The Supervisors*

*of Clark Co.*, 42 Wis. 515.    The oath required to be taken by the assessor is for the protection of taxpayers and the preservation of their rights, to the end that all property may be taxed according to its value, and the burdens of taxation equally borne by the tax paying citizens.    But a substantial compliance is all that is required.    In *Parish v. Golden*, 35 N. Y. 462, the affidavit of the assessors was not a literal compliance with the statute, yet the court held that it was sufficient if the affidavit was a substantial compliance with the statute. *Railroad v. Sup'rs Erie Co.*, 48 N. Y. 93.    While this precise question has never been passed upon by this court, the trend of the decisions is to the same effect. Thus in *State ex rel. Neill v. Phillips*, 102 Mo. 664, it was said:  "To defeat a recovery on the tax bill the defendant introduced the assessor's books for the years 1881 and 1882; the latter was authenticated by the affidavit of the assessor substantially in compliance with the provisions of section 6718 (now 7571), but the former was not verified at all by the assessor's affidavit," and a judgment in favor of plaintiff for the taxes of both years was reversed and the cause remanded with directions to enter up judgment for the year of 1882 only. *State ex rel. Lewellen v. Schooley*, 84 Mo. 447.    *State ex rel. Harvey v. Cook*, 82 Mo. 185, was an action to recover taxes due on certain land.    There was no affidavit annexed to the assessor's book and it was held that the assessment was void.

The affidavit states that the assessor made diligent efforts to ascertain all taxable property being and situate in the county on the first day of June last past, and the actual cash value thereof, and that the assessment thereof is correctly set forth in the assessor's book.    This is a substantial compliance with the statute, and the law requires nothing more.    To add

the omitted words, to wit, "in the manner and the value thereof stated therein according to the mode required by law," would at most be stating but conclusions of law, upon which it is the province of the court to pass. While it would have been better had the assessor followed the form of affidavit prescribed by statute, an immaterial departure therefrom, which in no way operated to the prejudice of Scruggs, should not, we think, be held to vitiate the assessment, and thereby relieve him from the payment of his taxes.

While there may have been some irregularities in arranging the property assessed on the tax books by the assessor, there was no irregularity of a substantial character, which we think prejudiced the rights of Scruggs.

The judgment is therefore reversed with directions to the court below to enter up judgment for the taxes, interest and costs in accordance with the prayer of the petition.

GANTT, P. J., and SHERWOOD, J., concur.